[Civ. No. 28497. Second Dist., Div. Three. May 11, 1966.]

MARC STERLING, Plaintiff and Appellant, v. LOUIS J. GALEN et al., Defendants and Respondents.

Ryan & Traxler and Sidney Traxler for Plaintiff and Appellant.

McKenna & Fitting and Norman H. Raiden for Defendant and Respondent.

KAUS, J.—This is an appeal from a summary judgment in favor of defendants.

In August or September of 1961 defendant Galen, who is the president of defendant Trans-World Financial Company ("Trans-World"), purchased either for himself or on behalf of Trans-World 95 percent of the capital stock of Claremont Building and Loan Association ("Claremont"). On March 16, 1962, plaintiff filed his first action—not the one involved in this appeal—alleging in his first complaint the following matters:

On August 23, 1961, he told Galen about a building and loan association which was for sale. He said that he could put Galen in touch with the sellers, but that he wanted a finder's fee of 5 percent of the total purchase price, payable in stock of the association. On August 26, 1961, Galen agreed to Sterling's proposition and Sterling thereupon revealed the name of Claremont and informed Galen of the terms on which he thought a purchase could be made. He also told Galen that he had several other prospective purchasers.

On September 21 Galen told plaintiff that he was going ahead with the purchase of Claremont and that the oral agree-

ment would be reduced to writing when the deal was consummated. On September 22 plaintiff wrote a letter to Galen confirming their agreement and on October 2 Galen replied, stating that he had never agreed to pay a finder's fee. The complaint then made certain allegations to justify the claim for specific performance and there was a second count for damages. The first count—and by incorporation the second—contained the following language which eventually proved destructive of plaintiff's case: ". . . plaintiff *on* [*sic*] reliance of the promise of defendant . . . and the contract heretofore set out, spent many days arranging, and applying his efforts towards a consummation of the purchase of Claremont Building and Loan Association which was consummated."

The two defendants filed identical demurrers. Although in addition to a claim that the complaint stated no cause of action, these demurrers also claimed that the court had no "jurisdiction" over the subject matter because plaintiff had not alleged that he was a licensed business opportunity broker or salesman and that he, for the same reason, had no "legal capacity to sue," the points and authorities attached make it clear that what defendants were claiming was simply that the complaint did not state a cause of action because it revealed that Sterling had acted as a business opportunity broker and not as a mere finder and did not allege that he was duly licensed. (Bus. & Prof. Code, § 10257.)[1]

In his reply memorandum Sterling took the position he has taken throughout this litigation, namely that he had acted merely as a finder who introduced the parties and that his part of the bargain with Galen was fulfilled when he introduced the parties.

The trial court sustained the demurrers and conditioned the granting of leave to amend by specifying that it be done by a verified amended complaint. About two months later Sterling filed such an amended complaint, similar to the original complaint in all respects, except that he dropped the language about his having spent many days of efforts towards a consummation of the sale and instead pleaded that in reliance on Galen's promise he "refrained from attempting to introduce any other prospective buyer to the sellers and generally vouched for the integrity and financial ability of defendants to

---

[1]Sections 10250-10341 of the Business and Professions Code dealing with "business opportunity regulations" were repealed by the 1965 Legislature and portions thereof merged into the Real Estate Law, Business and Professions Code, § 10000 et seq.

consummate a purchase . . ." Defendants filed demurrers, identical to those previously filed, adverting in the accompanying memoranda to the fact that plaintiff had merely dropped the allegation which they deemed fatal to his cause, without explaining its presence in the original complaint. Plaintiff then filed a reply memorandum, pointing to *Jackson* v. *Pacific Gas & Electric Co.*, 95 Cal.App.2d 204 [212 P.2d 591], a case where the court had held an adequate explanation for a fatal but inadvertent statement had been given. Plaintiff further argued that whatever he had alleged did not remove him from the category of a finder. The court was unimpressed and the demurrers sustained without leave to amend. The minute order recites the following authorities: Business and Professions Code, section 10252 which defined the activities which bring a person within the definition of being a business opportunity broker, section 10257 which required allegation and proof of a license in an action for compensation for service of such a broker, *Crofoot* v. *Spivak*, 113 Cal.App.2d 146 [248 P.2d 45], a case holding that the plaintiff Crofoot had merely acted as a finder, *Muller* v. *Muller*, 156 Cal.App.2d 623 [320 P.2d 205] and *Hart* v. *Gudger*, 153 Cal.App.2d 217 [314 P.2d 549], two of the many cases standing for the proposition that "one may not cure a defect in a complaint by the omission, after earlier disclosure in another pleading, of the defective allegation in a subsequent complaint pertaining to the same cause of action." (*Muller* v. *Muller, supra*, p. 625.)

Judgment was entered on August 16, 1962. The judgment became final.

Bested in the central district of the Los Angeles superior court, plaintiff procured new counsel who, on May 23, 1963, filed the present action in the west district. This is a summary of the complaint:

Sometime between August 23 and September 10, 1961, plaintiff and defendants Galen and Trans-World entered into an oral agreement to the effect that if plaintiff would introduce defendants to the owners of a savings and loan association who were willing to sell all or substantially all of the capital stock of the association on terms acceptable to defendants, the latter would pay him a finder's fee of 5 percent of the purchase price. Plaintiff performed his part of the bargain, put defendants in touch with persons who had an option to buy 95 percent of the stock of Claremont, defendants bought that stock on or about September 30, 1961, but have not paid plaintiff his fee. A second count is based on a "quantum meruit" theory rather than an express contract.

Defendants answered, denying the essential parts of the complaint and claiming, as an affirmative defense, that the matter was res judicata. Defendants later moved for a summary judgment. This motion was based not only on the defense of res judicata, but also on the merits of the case, defendants claiming that a deposition of plaintiff which had been taken revealed, as a matter of law, that he had acted as a broker.

Since it is clear to us that the defense of res judicata is applicable to the facts of this case, we will not discuss the effect of plaintiff's deposition. Nor is it in any way material whether or not the first action was correctly decided. "An erroneous judgment is as conclusive as a correct one." *Panos* v. *Great Western Packing Co.*, 21 Cal.2d 636, 640 [134 P.2d 242].

The law with reference to the effect of a judgment following the sustaining of a demurrer was summed up by the Supreme Court in *Crowley* v. *Modern Faucet Mfg. Co.*, 44 Cal.2d 321, 323 [282 P.2d 33] : "(1) A judgment entered after a general demurrer has been sustained 'is a judgment on the merits to the extent that it adjudicates that the facts alleged do not constitute a cause of action, and will accordingly, be a bar to a subsequent action alleging the same facts.' (2) '[E]ven though different facts may be alleged in the second action, if the demurrer was sustained in the first action on a ground equally applicable to the second, the former judgment will also be a bar.' (3) 'If, on the other hand, new or additional facts are alleged that cure the defects in the original pleading, it is settled that the former judgment is not a bar to the subsequent action whether or not plaintiff had an opportunity to amend his complaint.' "

 Plaintiff does not dispute these propositions, but claims that the judgment in the first action was not on the merits, in that the demurrers were both general[2] and special and the order sustaining them "does not specifically state on what ground it was based." There is no merit to that position. The only special demurrer filed in the first action was the one which attacked the capacity of plaintiff to sue. This was clearly not well taken. (*Parker* v. *Bowron*, 40 Cal.2d 344, 351

---

[2]The fact that defendants' general demurrers were sustained without leave to amend in the first action is not, of course, determinative of the question of res judicata. As the Supreme Court explained in *Goddard* v. *Security Title Ins. & Guar. Co.*, 14 Cal.2d 47, 52 [92 P.2d 804], there are frequent occasions when even the sustaining of a general demurrer does not result in a judgment on the merits.

[254 P.2d 6] ; *Klopstock* v. *Superior Court,* 17 Cal.2d 13, 17-18 [108 P.2d 906, 135 A.L.R. 318].) Equally misdirected were the demurrers claiming that the court had no jurisdiction. Thus the only tenable ground for demurrer was the one on which the court obviously based its ruling, namely that the complaint did not state a cause of action. The authorities listed in the minute order reveal no reason for doubt. The court simply felt, rightly or wrongly, that plaintiff had pleaded that he had performed acts requiring a license and that the allegation to that effect in the original complaint had not been adequately explained in the amended one.[3] *Olwell* v. *Hopkins,* 28 Cal.2d 147 [168 P.2d 972] is very much in point. There, in the first action, the defendants moved to dismiss on the ground that the corporation through which plaintiffs derived their rights had not qualified to do business in California when it entered into the contract on which the action was based. The motion was granted. Shortly thereafter plaintiffs started a second action arising out of the same basic facts. The filing and dismissal of the first action were referred to in the complaint. Defendants demurred and filed a motion to dismiss the action on the grounds that the action was barred by the former judgment of dismissal. The court sustained the demurrer and granted the motion to dismiss. Its action was affirmed. In doing so the Supreme Court noted that the question was whether the dismissal of the first action was ''on the merits.'' It canvassed the record of the first action and found that it was ''. . . clear from the record that the one issue passed upon by the trial court in dismissing the first action was that raised by defendants' contention that plaintiffs' cause of action was based upon a contract that was void. The defense thus interposed went to the merits of plaintiffs' cause of action. Defendants did not merely contend that plaintiffs had no capacity to sue or that they had started their action prematurely or in the wrong court or that that particular action was barred on account of some other technical defect. (See 15 Cal.Jur., Judgment,

---

[3]It may well be that the trial judge in the first action applied the rule which is commonly identified with *Wennerholm* v. *Stanford School of Medicine,* 20 Cal.2d 713, 716-717 [128 P.2d 522, 141 A.L.R. 1358] with undue harshness. If so, this was an error which could easily have been cured by appeal as was done in *Avalon Painting Co.* v. *Alert Lbr. Co.,* 234 Cal.App.2d 178, 182-185 [44 Cal.Rptr. 90]. The fact that the trial court in the first action arrived at a decision on the merits by the unduly harsh application of a procedural rule, does not detract from the fact that the decision was nevertheless on the merits. Any other view would remove from the application of the doctrine of res judicata any cause where, in the process of arriving at the decision on the merits, the court, in the first action, misapplied a technical rule of pleading or procedure.

§ 183; Rest., Judgments, § 49.) They raised an issue as to plaintiffs' right to recover under any circumstances upon their alleged cause of action and upon that issue the court rendered judgment against plaintiffs. Plaintiffs point out that the trial judge stated in his memorandum opinion that the issue raised by defendants should be decided 'before a trial is had upon the facts.' *A decision on the merits, however, is not necessarily a decision upon the facts. . . .*'' (*Ibid.,* p. 150; italics added.)

So here the superior court held in the first action that plaintiff, in the absence of a license, had no right to recover on his alleged cause of action because his activities required one.[4]

No useful purpose would be served by an attempt on our part to distinguish all cases which have held that on the particular facts involved a judgment after demurrer was not on the merits, but some representative decisions will be discussed.

First and foremost there is the leading California case of *Goddard* v. *Security Title Ins. & Guar. Co.,* 14 Cal.2d 47 [92 P.2d 804]. There, after a survey of the applicable law, the Supreme Court held that a final judgment of the Circuit Court of Appeals on the theory that an action for conversion was inappropriate and that plaintiff's remedy was an action on the case, was not a judgment on the merits. Thus the case clearly was one where the general demurrer to the first action had been sustained because plaintiff had misconceived his remedy.

In the same class is *Keidatz* v. *Albany,* 39 Cal.2d 826 [249 P.2d 264], where, in the first action, a general demurrer to a complaint for rescission of a contract was sustained on the basis of laches. Plaintiffs then filed over, claiming damages. This then was a case where ''new or additional facts'' were alleged which cured the defect in the previous pleading.

In *Lunsford* v. *Kosanke,* 140 Cal.App.2d 623 [295 P.2d 432] the judgment in the first action was held to be not on the merits because after reviewing the proceedings the appellate court came to the conclusion that it was based on a determination by the trial court that under the pleadings in that action, as they stood, no relief could be granted—a defect which was cured in the second action. Moreover defendant was held

---

[4]It is evident from the memoranda filed by both parties in the first action and in the present action, both in the superior court and here, that if they agree on nothing else, they agree that 95 percent of the stock of Claremont represented a ''business opportunity'' within the meaning of former section 10251 of the Business and Professions Code. We say nothing about the correctness of that assumption.

estopped from claiming that the determination was on the merits because it was he who had claimed throughout the first action that it was only the form of the pleadings which stood in the way of plaintiff's proposed proof.

It seems indeed regrettable that plaintiff is out of court. His position on the facts, as revealed by his deposition, that his activities did not go beyond those permitted a "finder" is at least arguable. Nor can we say that his most damaging admission, namely that after the introduction of the parties he, at defendants' request, undertook to speak to the seller of the securities "about a lesser price" and "thought" that he had a telephone conversation with the seller to that effect, is not subject to some explanation. ▮ But as was said in the last cited case, *Lunsford* v. *Kosanke, supra*: "The doctrine of res judicata is dictated by the wisdom of eliminating needless and repetitive calls upon our law courts. The dignity and seriousness of the judicial process, and the necessity of preventing any harassment of litigants, require that reasonable restrictions be placed on the right to submit any one controversy between specific parties to our courts of justice. A party plaintiff or defendant is entitled to his day in court; if he raises a question as to the respective rights of another person and himself he deserves, and will get, his answer; but once having secured a final determination of his right, he cannot again ask the court to redecide the same question on its merits. ▮ He cannot split his cause of action, or have his case decided piecemeal." (*Ibid.*, p. 627.)

The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.